**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. 24-08267MJ-001-TUC-LCK |
| Plaintiff, | **ORDER** |
| v. | |
| Tiodoro Granillo, | |
| Defendant. | |

Before the Court is Defendant's Appeal of Order of Detention to District Court. Doc. 8. Defendant appeals Magistrate Judge Michael A. Ambri's order that he remain detained pending trial. Doc. 7. For the following reasons, the Court will affirm Judge Ambri's Order of Detainment.[1]

## I.     Background

On August 15, 2024, United States Border Patrol (USBP) agents encountered Defendant at the border checkpoint on Interstate 19 in Amado, Arizona. Doc. 1. Defendant was driving a Chrysler Town and Country minivan accompanied by a male passenger. *Id.* The minivan was registered to Defendant and bore a temporary Arizona license plate. *Id.* A USBP agent asked Defendant if he was a United States citizen, and he responded, "Yes, I am. This is my wife's car and I'm going to the flea market, and he is going to help me." *Id.* The agents noted that this "seemed like a rehearsed story," and a USBP canine trained to detect narcotics alerted to an odor coming from the vehicle. *Id.* The agents referred

---

[1] The Court finds these matters appropriate for resolution without an oral hearing. Fed. R. Civ. P. 78(b).

Defendant to secondary inspection, but Defendant "drove the vehicle straight ahead for a further than normal distance, without making the right turn towards the secondary area" before stopping. *Id.* The primary USBP agent thought Defendant might flee and called for additional units, after which Defendant turned into the secondary inspection area. *Id.* At secondary, USBP agents discovered 100 packages of methamphetamine weighing 51.52 kilograms and 20 packages of fentanyl weighing 16.04 kilograms concealed in the floor of the vehicle. *Id.* After waiving his *Miranda* rights, Defendant told the agents he had been given the vehicle by a man in Mexico. *Id.* Defendant was reportedly working off the cost of the vehicle by "running loads," picking up used clothing from Tucson and Phoenix and transporting them back to Nogales, Sonora, Mexico. *Id.* Investigators noted Defendant "appeared standoffish during the interview, and on several occasions, he slightly smiled when he claimed he had no knowledge of the narcotics in the vehicle." *Id.* Agents arrested Defendant. *See* Docket at 8/15/2024.

On August 16, 2024, the Government filed a two-count complaint alleging Defendant knowingly and intentionally possessed with intent to distribute (1) fentanyl and (2) methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(c). Doc 1.

On August 19, 2022, Defendant appeared before Judge Eric J. Markovich and was ordered detained pending a continuance of the detention hearing. Doc. 3. Pretrial Services recommended Defendant be released because, although defendant poses a risk of nonappearance and a risk of danger to the community, there is a condition or combination of conditions that reasonably minimize the risks. Doc. 2.

On August 21, 2024, Defendant appeared before Judge Michael A. Ambri and was ordered detained pending trial. Doc. 7. Defendant appealed, seeking release under the conditions set forth in the Pretrial Services Report (Doc. 2). Doc. 8.

## II.    Legal Standard

The district court reviews a magistrate judge's detention order de novo. *See United States v. Koenig*, 912 F.2d 1190, 1193 (9th Cir. 1990). The Bail Reform Act mandates release pending trial unless the court concludes that "no condition or combination of

conditions will reasonably assure the appearance of the person as required and the safety of any other person in the community." 18 U.S.C. § 3142(e). It is presumed that there are no such conditions if there is probable cause to believe that the defendant has violated a provision of the Controlled Substances Act or the Controlled Substances Import and Export Act punishable by a maximum term of imprisonment of ten years or more. 18 U.S.C. § 3142(e)(3)(A). This presumption shifts the burden of production to the defendant, but the burden of persuasion remains with the Government. *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008). If the defendant proffers evidence to rebut the presumption of dangerousness or flight risk, the Court then considers four factors from the Bail Reform Act to determine whether to detain or release the defendant:

> (1) the nature and circumstances of the offense charged…;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including—
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release....

18 U.S.C. § 3142(g).

The Government must prove that the defendant poses a flight risk by a preponderance of the evidence. *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991). The Government must prove the defendant presents a danger to the community by clear and convincing evidence. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). Any doubts about the propriety of release should be resolved in the defendant's favor. *Id.* at 1405.

///

///

- 3 -

### III.    Analysis

#### A.  Rebuttable Presumption Favoring Detention

The Bail Reform Act creates a rebuttable presumption that a defendant must be detained if there is probable cause to believe that he violated a provision of the Controlled Substances Act that is punishable by a maximum sentence of ten years or more. 18 U.S.C. § 3142(e)(3)(A).

Here, Defendant has been charged with two counts under 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Doc. 1), which carry a statutory maximum sentence of 20 years. 21 U.S.C. § 8419(b)(1)(C). Based on the discovery of the narcotics concealed in the vehicle registered to and driven by Defendant, the Court finds that probable cause exists. Doc. 1; Doc. 11 at 2. The burden then shifts to Defendant to proffer evidence to rebut the presumption of dangerousness or flight risk.

Defendant maintains that, despite his residence in Mexico for the past two years, he is not a flight risk because his wife, who is a Mexican citizen, can enter the United States to visit him with her visa. Doc. 11 at 3.  He also has five adult children who live in Arizona and three siblings who are all United States citizens. *Id.* Further, Defendant lived and worked in Arizona for 20 years before his retirement and relocation to Mexico. *Id.* at 4. Defendant suffers from several health issues, including diabetes, neuropathy, heart issues that required implantation of a pacemaker, and Bell's Palsy. *Id.* In spring 2024, Defendant had his left foot amputated because of a severe infection. *Id.* All of Defendant's criminal history aside from the instant arrest occurred before his amputation, and his last offense leading to arrest occurred over 10 years ago in 2013. *Id.* The facts are sufficient to rebut the presumption. Therefore, the Court considers the four Bail Reform Act factors.

#### B.  Bail Reform Act Factors

##### 1.  Nature and Circumstances of the Offense

Defendant is charged with one count of possession with intent to distribute fentanyl in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and one count of possession with intent to distribute methamphetamine also in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). The Court may consider the possible punishment and the incentive to flee

associated with a defendant's criminal exposure. *See United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990).

Here, the nature and circumstances of the offense favor detention. The United States has a strong interest in preventing the importation of controlled substances due to the potential harm they pose to individuals and communities. Further, Defendant is charged with two separate counts and faces a 20-year statutory maximum for each (Doc. 1), creating an incentive to flee.

### 2. Weight of Evidence Against the Defendant

The weight of the evidence is the least important factor and is not a pretrial determination of guilt. *Motamedi*, 767 F.2d at 1408; *Townsend*, 897 F.2d at 994. Here, Defendant was the driver and registered owner of a vehicle found to contain 51.52 kilograms of methamphetamine and 16.04 kilograms of fentanyl. Doc. 11 at 1–2. Before Defendant was referred to secondary inspection, Defendant said that he was driving his wife's car to go to the flea market assisted by a male passenger. Doc. 1. But, after the narcotics were discovered, Defendant waived his *Miranda* rights and said a man in Mexico gave him the van and he was working off the cost of the van by "running loads" of used clothing from Tucson and Phoenix, Arizona back to Nogales, Mexico. *Id.*; Doc. 11 at 2. Defendant claimed not to know about the narcotics in his vehicle, but before driving to the secondary inspection area, Defendant drove in a way that USBP agents interpreted as "contemplating fleeing." Doc. 1. The evidence is strong. This factor favors detention.

### 3. History and Characteristics of the Defendant

The Defendant is a 65-year-old male who was born and raised in Mesa, Arizona but for the past two years has lived in Mexico with his wife. Doc. 2 at 2. Defendant is a U.S. citizen and does not possess a passport. *Id.* He last traveled to the United States in April 2024. *Id.* Defendant has been retired for the past five years but previously was employed in Arizona with LR Contreras Concrete Company for 20 years. *Id.*

Defendant's five adult children live in Arizona and are U.S. citizens, and his three siblings are also U.S. citizens. *Id.* His wife of three years is a citizen and resident of Mexico and has a visa. *Id.* Defendant's son, Tiodoro Granillo, lives in Santan Valley, Arizona, and

Defendant is welcome to live with him if released. *Id.* Pretrial Services, however, does not view Mr. Granillo as an appropriate third-party custodian due to his own criminal history. *Id.*

Defendant suffers from "severe medical conditions." Doc. 8 at 4. He suffers from diabetes, heart issues, neuropathy, and Bell's palsy. Doc. 2 at 3. He also has a pacemaker and recently had his foot amputated. *Id.* Defendant was diagnosed with anxiety at age 50 by his primary care physician for which he is prescribed Prozac. *Id.* Defendant reports having ceased alcohol use ten years ago but previously consumed six beers per sitting weekly. *Id.* Defendant's son reports that Defendant's past alcohol usage was problematic and suspects that Defendant still occasionally consumes alcohol moderately. *Id.*

Defendant has an extensive criminal history beginning with an arrest for felony burglary at age 22. Defendant has served multiple prison sentences, most recently a five-year sentence for aggravated assault, which ended in 2018. *Id.*; *see also* Doc. 8 at 4. When Defendant committed the aggravated assault that led to his five-year prison sentence, he was already under court supervision for theft of a credit card. Doc. 11 at 4; Doc. 2 at 4. Defendant also has a history of failure to appear. Doc. 2 at 4–5. Defendant most recently failed to appear in court in April 2019. *Id.* at 5; Doc. 11 at 4[2].

Defendant argues that he is not a flight risk despite his residence in Mexico because his wife can visit him using her visa, and the Court could grant Defendant permission to visit her as necessary. Doc. 8 at 3. Defendant's siblings and children still live in the United States, and Defendant can live with his son, Tiodoro, pending trial. *Id.* at 3–4. Further, Defendant argues that his deteriorating health, which cannot be treated to the same extent in custody that it can out of custody, places him in no condition to fail to appear. *Id.* at 4. While he does have a criminal history, Defendant argues that his latest arrest leading to prison time occurred more than ten years ago and before his leg amputation. *Id.*

The Government argues that Defendant's residence in Mexico and lack of financial

---

[2] While the Government's Response (Doc. 11) cites to the Pretrial Services Report (Doc. 2) for the proposition that "[t]he last time [Defendant] was ordered to appear in court in April 2024, . . . he failed to appear," the Report indicates that Defendant's last recorded involvement with law enforcement occurred in 2019. *See* Doc. 11 at 4; Doc. 2 at 5.

ties or employment in the United States gives him an established home beyond the jurisdiction of the United States, and the potential "essentially . . . life sentence" Defendant faces gives him an incentive to return to Mexico. Doc. 11 at 4–5. Further, the Government argues that Defendant's criminal history indicates that he will not abide by the conditions of release and is at high risk of failing to appear. *Id.* at 4. Defendant's most serious offenses occurred later in his life, and his medical condition will not ensure his compliance with the Court's orders, as evidenced by the instant offense being committed despite his age and amputation. *Id.* at 5.

Defendant, while a U.S. citizen, resides in Mexico and has no financial or employment ties to the United States. He has significant familial ties in both Mexico and the United States, but the nature of his relationship with his children and siblings does not appear to be a disincentive to return to his life in Mexico, where he has lived with his wife for two years. Defendant's criminal history suggests a significant risk of failure to appear. While the Court is sympathetic to Defendant's medical condition and acknowledges that his age and confinement to a wheelchair may be a disincentive to fail to appear, Defendant's current condition did not stop him from traveling across the border once before. Considered together, Defendant's history and characteristics weigh slightly in favor of detention.

**4. Dangerous Nature**

The Government does not argue that Defendant's release poses a danger to person or community. *See* Doc. 11 at 3. Defendant is not being charged with a violent offense. Defendant's prior violent offense occurred before his amputation and confinement to a wheelchair. Defendant's release is unlikely to pose a danger to person or community.

**IV. Conditions of Release**

A person facing trial is entitled to release under the least restrictive conditions that will reasonably assure the appearance of the person and should only be denied in rare circumstances. *Motamedi*, 767 F.2d at 1405. Even in the presence of risk, a defendant must still be released if there are conditions of release that may be imposed to mitigate the flight risk or risk to the community. *See* 18 U.S.C. § 3142(e). Any doubts about the propriety of release should be resolved in Defendant's favor. *Motamedi*, 767 F.2d at 1405.

The Government raised concerns about Defendant's risk of nonappearance due to his substantial ties to Mexico and history of failure to appear and abide by court orders. While Pretrial Services found that there were conditions that could mitigate this risk and recommended release, Pretrial Services found no suitable custodian and recommended release on Personal Recognizance. Doc. 2. Defendant's history of failing to appear and violating court orders, however, does not support the notion that Defendant will abide by the conditions of release. The Court finds by a preponderance of the evidence that Defendant is a flight risk and that no condition or combination of conditions will reasonably assure the appearance of Defendant on his own recognizance.

**V.    Order**

Accordingly,

**IT IS ORDERED DENYING** Defendant's Appeal from Magistrate Judge Detention Order (Doc. 8).

**IT IS FURTHER ORDERED AFFIRMING** Judge Ambri's Order of Detention (Doc. 7). Defendant shall remain in custody pending trial.

Dated this 3rd day of September, 2024.

John C. Hinderaker
United States District Judge